**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LATAUNYA HOWARD,

               **Plaintiff,**

**v.**

OFFICE OF THE CHIEF
ADMINISTRATIVE OFFICER OF THE
UNITED STATES HOUSE OF
REPRESENTATIVES,

               **Defendant.**

Civil Action 09-01750  (HHK)

## MEMORANDUM OPINION AND ORDER

Plaintiff LaTaunya Howard brings this action against the Office of the Chief

Administrative Officer ("CAO") of the U.S. House of Representatives,[1] alleging that the CAO

violated the Congressional Accountability Act of 1995 (the "Accountability Act"), 2 U.S.C.

§ 1301 *et seq*., by demoting and then firing her on the basis of her race and in retaliation for

engaging in protected activity.  Before the Court is the CAO's motion to dismiss three counts of

Howard's complaint [#16].  The CAO's motion, which argues that Howard cannot prove her

claims without inquiring into matters protected by the Speech or Debate Clause of the

Constitution, raises weighty questions regarding the interaction of that provision with the

Accountability Act itself.  Upon consideration of the motion, the opposition thereto, the record of

this case, and the hearing held before the Court on January 21, 2011, the Court concludes that the

motion must be granted in part and denied in part.

---

[1]      For the sake of simplicity, the Court will refer to the defendant in this action as
"the CAO," although the defendant is technically not the CAO himself but rather the legal entity
of his office. *See* 2 U.S.C. §§ 1301(9), 1408(b).

## I. BACKGROUND

### A.     The Congressional Accountability Act of 1995

The Accountability Act extends to certain legislative branch employees the protections of a number of federal remedial statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.  See* 2 U.S.C. § 1311(a)(1) (prohibiting "discrimination based on . . . race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964").  The Accountability Act also includes an anti-retaliation provision that prohibits intimidation, reprisal, or discrimination against a covered employee because that employee has opposed or reported any practice made unlawful by the Act.  2 U.S.C. § 1317(a).  The Act applies to, inter alia, any employee of the House of Representatives or the Senate.  *See id.* § 1301(3)(A), (B).  The Act waives sovereign immunity for claims brought thereunder, *Fields v. Office of Eddie Bernice Johnson, U.S. Congress*, 459 F.3d 1, 8 (D.C. Cir. 2006) (en banc), but expressly withholds waiver of "the privileges of any Senator or Member of the House of Representatives under article I, section 6, clause 1," 2 U.S.C. § 1413, better known as the Speech or Debate Clause.  This statutory framework has been in place throughout the events that constitute the subject matter of this litigation.

### B.     Factual Background

The CAO oversees the daily operations and infrastructure of the House.  As part of these responsibilities, the CAO helps the House Committees on Appropriations and House Administration prepare the annual appropriations bill that funds the operations of the legislative branch.  Howard, an African-American woman, was hired by the CAO as Deputy Budget Director in April of 2003.  Am. Compl. ¶ 3.  From December of 2004 through early 2005,

Maureen Longstaff, the Budget Director, took maternity leave, during which time Howard served as Acting Budget Director, receiving a temporary salary increase. Am. Compl. ¶ 6. In December of 2005, Longstaff announced her intention to resign the following June, prompting a search for a new Budget Director. Am. Compl. ¶¶ 12–13.

Howard applied and was interviewed for the Budget Director position. She was among three candidates, and the only internal candidate, to be rated as highly qualified for the position. Am. Compl. ¶ 14. While Howard was on leave following surgery, however, the position was offered to a Caucasian male candidate. He declined, and the search was reopened. Am. Compl. ¶¶ 15–16. Howard then met with the director of human resources to express concern that she might have been passed over because of her medical leave absence. In June of 2006, Howard was offered and accepted the Budget Director position. Am. Compl. ¶ 19. Upon becoming Budget Director, Howard also began to assume some of the responsibilities of the Budget Officer, a related but separate position. Am. Compl. ¶ 21.

In February of 2007, Dan Beard was appointed as the new CAO, and commenced a reorganization of the office. Am. Compl. ¶ 23. The next month, Howard was informed that the Budget Officer title was being abolished, but that she was still expected to perform the Budget Officer tasks she had previously taken on. Am. Compl. ¶ 24. Howard became concerned that other employees were not subject to similar requests, and expressed her concerns to a co-worker. The CAO Administrative Counsel commenced an investigation, which, Howard asserts, concluded that a round of raises conducted in June of 2007 had resulted in a racial pay disparity. Howard avers that she was told that she would, as a result, receive a promotion to a higher grade and six months' worth of back pay. Am. Compl. ¶¶ 25–26. In November of 2007, Howard

received a performance evaluation from Deputy Associate Administrator Kathy Purdue that Howard felt was in certain respects "unjustifiably lower" than the previous year's evaluation. She complained, prompting an investigation, the resolution of which was to have Howard stop reporting to Purdue as of February 2008. Am. Compl. ¶¶ 29–30.

In January of 2009, Howard attended a meeting regarding the CAO's budget organization. She was told that a decision had been made to "do away with" the Budget Director title, and that she would become a Senior Advisor to Deputy CAO Ali Qureshi. Am. Compl. ¶ 35. After the change, she was told, her focus would shift from budget matters to analytical work, she would no longer have managerial responsibilities, and her pay would not change. Am. Compl. ¶ 36. Howard later discovered that she was one of three Senior Advisors to Qureshi, the other two of whom were Caucasian males who each earned $22,000 more than she did. Am. Compl. ¶ 47.

In February, Qureshi asked Howard to work with Budget Analyst Elizabeth Nuti, a Caucasian female, on the Government Contributions account. Howard avers that, rather than cooperate, Nuti asked Howard to perform the task in her stead. Howard appealed to Qureshi for clarification regarding her responsibilities, and attempted to meet with both him and Nuti, but was repeatedly rebuffed. Am. Compl. ¶¶ 38–40, 43–46. In mid-March, after further efforts by Howard to ascertain her role in the Government Contributions project, Qureshi asked her to complete the necessary tasks by March 20. Am. Compl. ¶¶ 49–50. Howard continued to attempt to meet with Qureshi, and eventually expressed concerns regarding her interactions with him to a human resources representative. Am. Compl. ¶¶ 51–53.

Howard and Qureshi eventually met in late March. Howard avers that Qureshi was unable to explain why he was opposed to meeting with Howard and Nuti to go over the assignment. Am. Compl. ¶¶ 55–56. Shortly thereafter, Qureshi, and later Nuti, represented to Howard that she would have the computer access necessary to complete her tasks. She found, however, that she did not, and informed both Qureshi and Nuti of that fact. She also emailed a set of suggestions to Nuti. Am. Compl. ¶¶ 58–61. In early April, however, Qureshi emailed Howard to threaten disciplinary action if she did not perform the suggestions that she had previously made to Nuti. Am. Compl. ¶¶ 62. A week later, he inquired whether she had done so; she responded that she was still unable to access the necessary files on the office computers. One week after that, Howard's employment was terminated.

Howard subsequently completed the counseling and mediation process required by the Act, *see* Am. Compl. Ex. A (End of Mediation Notice, June 18, 2009), and commenced this action, alleging that: (1) her termination was based on her race; (2) her transfer from Budget Director to Senior Advisor constituted a demotion, which was based on her race; (3) she received less pay, by approximately $22,000 per year, than the Caucasian Senior Advisors; and (4) her termination was motivated in part by retaliatory animus stemming from her prior complaints to human resources regarding pay disparities and other issues.

## II. ANALYSIS

The CAO now moves for dismissal of Howard's claims regarding her transfer and termination under Federal Rule of Civil Procedure 12(b)(1).[2] The CAO presents a single basis

---

[2]     Under Rule 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *see Kokkonen v.*

for this motion: that Howard cannot succeed in a suit based on these claims without straying into territory protected by the Speech or Debate Clause of the Constitution. Because this argument presents complex and novel questions of law, some doctrinal background is necessary.

## A. The Speech or Debate Clause

### 1. Purpose and Doctrine

Article I, section 6 of the Constitution provides that "Senators and Representatives shall . . . for any speech or debate in either House . . . not be questioned in any other place." U.S. CONST., art. I, § 6. This provision, known as the Speech or Debate Clause, serves to protect important separation-of-powers principles by shielding legislators from "intimidation by the executive and accountability before a possibly hostile judiciary." *United States v. Johnson*, 383 U.S. 169, 181 (1966). With this purpose in mind, the Supreme Court has applied the Clause beyond its literal terms, holding that it precludes judicial inquiry into acts that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). The Court has

---

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . ."). In response to such a motion, the plaintiff must establish that the Court has subject-matter jurisdiction over the claims in the complaint. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff is unable to do so, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). When resolving a motion made under Rule 12(b)(1), a court may consider material beyond the allegations in the plaintiff's complaint. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

likewise applied the Clause's protections to parties other than senators and representatives themselves, extending it to congressional aides and committees. *See Gravel*, 408 U.S. at 616–22.

The Supreme Court has been careful, however, not to "extend the [Clause's] privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process." *United States v. Brewster*, 408 U.S. 501, 516 (1972). Thus, the Clause "'does not prohibit inquiry into illegal conduct simply because it has *some nexus* to legislative functions,' or because it is merely 'related to,' as opposed to 'part of,' the 'due functioning' of the 'legislative process.'" *Fields v. Office of Eddie Bernice Johnson, U.S. Congress*, 459 F.3d 1, 10 (D.C. Cir. 2006) (en banc) (quoting *Brewster*, 408 U.S. at 514, 528) (internal citations omitted).

As Speech or Debate Clause doctrine has evolved, it has resulted in three distinct protections: (1) immunity from civil or criminal liability for "conduct . . . within the 'sphere of legitimate legislative activity,'" *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (quoting *Gravel*, 408 U.S. at 624); (2) an evidentiary privilege barring the introduction of evidence of legislative acts against a protected party, *see United States. v. Helstoski*, 442 U.S. 477, 487–90 (1979); and (3) a testimonial and non-disclosure privilege that prevents a protected party from being compelled to answer questions about legislative activity or produce written legislative materials. *See United States v. Rayburn House Office Bldg., Room 2113, Wash., D.C. 20515*, 497 F.3d 654, 659–60 (D.C. Cir. 2007) (citing *Gravel*, 408 U.S. at 616; *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995)).

## 2.      The Speech or Debate Clause and Employment Suits

The D.C. Circuit first addressed the role of the Speech or Debate Clause in legislative branch employment actions in *Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984).  The *Walker* court held that the Clause did not bar a gender discrimination suit, brought under the Equal Protection Clause, by the manager of the House restaurant system.  The court explained that because the plaintiff performed only auxiliary, non-legislative services, her termination was not a legislative act into which the courts were barred from inquiring.  *See id.* at 927–32.

Conversely, the D.C. Circuit held in *Browning v. Clerk, U.S. House of Representatives*, 789 F.2d 923 (D.C. Cir. 1986), that the Clause required the dismissal of a race discrimination suit brought by the official House Reporter.  Looking to *Walker*, the *Browning* court stated that, in such cases, "the ultimate issue [is] the *duties of the employee*.  Where the duties of the employee implicate Speech or Debate Clause concerns, so will personnel actions respecting that employee."  *Id.* at 928 (citing *Walker*, 733 F.2d at 930–31) (internal citation omitted); *see id.* at 929 ("[I]f the employee's duties are an integral part of the legislative process . . . personnel decisions affecting them are correspondingly legislative and shielded from judicial scrutiny.").  Applying that test, the court concluded that the official House Reporter "plays a role that is 'intimately cognate to the legislative process,'" making her termination a legislative act that could not give rise to liability.  *Id*. at 928 (quoting *Walker*, 733 F.2d at 931).

*Browning* stood until 2006, when the D.C. Circuit issued its en banc decision in *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1.  *Fields* was a consolidation of two Accountability Act suits alleging unlawful termination from a Member's office.  In each case, the district court had without explanation denied the defendant's motion to dismiss the action on speech or debate

grounds.  The *Fields* plurality (there was no majority opinion) concluded that *Browning*'s duty-based test was too broad, pointing out numerous situations in which an employee with legislative duties could be terminated for patently non-legislative reasons.  *See* 459 F.3d at 11–12; *see also id.* at 18 (Tatel, J., concurring) ("All of us agree that *Browning* . . . extends further than the Speech or Debate Clause requires.").  Accordingly, the court set aside the *Browning* test.

The *Fields* plurality then turned to the question of how the district courts should evaluate the role of the Speech or Debate Clause in the suits at bar.  The plurality concluded that neither discrimination suit expressly predicated liability on legislative acts, but cautioned that "the fact that [the plaintiffs] are able to plead *prima facie* cases under the Accountability Act without violating the Speech or Debate Clause does not mean the Speech or Debate Clause in no way hinders their suits."  *Id.* at 14.  Rather, the plurality warned, a discrimination suit that did not include direct evidence of discrimination might, under the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), not be able to proceed without requiring a Member to answer questions, "in a deposition, on the witness stand, and so forth," regarding legislative activities.  *Id.*  The plurality explained:

> Suppose a plaintiff sues a Member's personal office claiming her discharge violated the Accountability Act.  Suppose further that she is able to make out a *prima facie* case of discrimination of one form or another.  If the employing office produces evidence — by affidavit, for example — that the personnel decision was made because of the plaintiff's poor performance of conduct that is an integral part of 'the due functioning of the [legislative] process,' then for the plaintiff to carry her burden of persuasion, she must 'demonstrate that the proffered reason was not the true reason for the employment decision.'  In many cases, the plaintiff would be unable to do so without 'draw[ing] in question' the legislative activities and the motivations for those activities asserted by the affiant — matters into which the Speech or Debate Clause prohibits judicial inquiry.

*Id*. at 15–16 (quoting *Brewster*, 408 U.S. at 516, 526 (emphasis omitted); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (alterations in original) (internal citations omitted).

In light of this potential conflict, the plurality laid out a framework under which such cases might proceed:

> [A]s in any other employment discrimination case, the defendant will provide evidence of a legitimate nondiscriminatory reason for the discharge. To invoke the Speech or Debate Clause, the employing office should include with this evidence an affidavit from an individual eligible to invoke the Speech or Debate Clause recounting facts sufficient to show that the challenged personnel decision was taken because of the plaintiff's performance of conduct protected by the Speech or Debate Clause. The affiant must have personal knowledge of the facts underlying his averment and otherwise must be able to assert a Member's Speech or Debate Clause immunity. The affidavit must indicate into what 'legislative activity' or into what matter integral to the due functioning of the legislative process the plaintiff's suit necessarily will inquire.
>
> With that submission, the district court must then determine whether the asserted activity is in fact protected by the Speech or Debate Clause. If it is, the action most likely must be dismissed, as the failure to rebut a defendant's evidence with 'evidence . . . that the[ ] proffered justifications were mere pretext' normally is fatal to a plaintiff's discrimination allegations.

*Id*. at 16 (quoting *Smith v. District of Columbia*, 430 F.3d 450, 455–56 (D.C. Cir. 2005)) (alteration in original) (internal citations omitted).

Having rejected *Browning* and articulated a narrower test for Speech or Debate protection in employment cases, the *Fields* court affirmed the district court's denials of the defendants' motions to dismiss.[3] *See id.* at 17. It noted, however, the narrow scope of its decision:

---

[3] On remand, neither district court had occasion to further consider the speech or debate issues raised in *Fields*. *See Hanson v. Office of Senator Mark Dayton*, No. 03-1149 (D.D.C. Feb. 11, 2009) (stipulation of dismissal); *Fields v. Office of Johnson*, 520 F. Supp. 2d 101 (D.D.C. 2007) (granting summary judgment for the defendant without reference to the Speech or Debate Clause).

We need not decide today whether a case in which the plaintiff uses evidence unrelated to legislative acts — such as direct evidence of discrimination or evidence that at the time of discharge the Senator offered a different reason for the employment action from the one alleged in the affidavit — to demonstrate that the defendant's legislative explanation is pretext requires more questioning of the defendant's legislative motives than the Speech or Debate Clause allows. We merely note that a plaintiff who seeks to prevail by quarreling with the defendant's statements about activity protected by the Speech or Debate Clause must fail.

*Id.* at 16–17.

*Fields* has been applied only once: in *Scott v. Office of Alexander*, 522 F. Supp. 2d 262 (D.D.C. 2007), Representative Rodney Alexander's former scheduler sued Alexander's office, alleging harassment, discrimination, retaliation and constructive discharge based on sex. *See id.* at 265. Applying the framework described by the *Fields* plurality, the *Scott* court held that the scheduler's retaliation claim had to be dismissed.[4] First, the court found that the suit did not predicate liability on core legislative activities, thereby avoiding the Speech or Debate Clause's absolute immunity component. *See id.* at 268–69. Next, the court determined that the defendant had, in an affidavit from the Congressman describing the impact of the plaintiff's duties (and errors in performing those duties) on his legislative responsibilities, asserted "legitimate, non-retaliatory reasons for Plaintiff's demotion that are protected from inquiry by the Speech or Debate Clause." *Id.* at 271. Finally, the *Scott* court concluded that, because the plaintiff had not indicated "that there exists any evidence contrary and unrelated to the Congressman's stated reasons for Plaintiff's demotion that would not require an inquiry into the legislative acts described [in the affidavit]," the plaintiff's retaliation claim could not succeed without

---

[4] Because the defendant had moved to dismiss only this claim on Speech or Debate Clause grounds, *Scott* did not address the impact of the Clause on the plaintiff's other claims. *See Scott*, 522 F. Supp. 2d at 274.

transgressing the boundaries of the Speech or Debate Clause and thus had to be dismissed. *Id.* at 272.

**B.     Howard's Discrimination and Retaliation Claims**

In seeking the dismissal of Howard's claims regarding her transfer and termination, the CAO argues, in effect, that this case is *Scott*: he concedes that Howard's claims do not predicate liability on core legislative acts and assumes that Howard can make out a *prima facie* case of discrimination.  He then offers an affidavit invoking the Speech or Debate Clause, explaining his official responsibilities, and describing Howard's ostensibly legislative duties and her alleged shortcomings in carrying out those duties.  Finally, he argues that Howard cannot contest the affidavit's description of her duties and her performance thereof without intruding into the area protected by the Speech or Debate Clause's non-disclosure privilege.  In order to resolve these arguments, the Court must, in accordance with *Fields* and *Scott*, determine "[w]hether Plaintiff can prove her claim[s] . . . without inquiring into legislative acts or the motivation for performance of legislative acts."  *Scott*, 522 F. Supp. 2d at 269.

To answer that question, the Court first looks to the affidavit submitted by Dan Beard, who was the CAO during the events at issue here.[5]  In it, Beard first describes the role and responsibilities of the CAO and his office.  Broadly, the affidavit asserts that the CAO has both administrative and legislative responsibilities, the latter of which include assisting the House Committees on Appropriations and House Administration in developing and enacting the annual budget for the legislative branch.  *See* Def.'s Mot. Ex. A ("Beard Aff.") ¶¶ 5–6.  As part of that

---

[5]     As in *Scott*, the CAO indicates that the affidavit is submitted for the sole purpose of invoking the Speech or Debate Clause as described in *Fields*.  *Compare* Beard Aff. ¶ 1, *with Scott*, 522 F. Supp. 2d at 270 n.7.

task, the CAO and his office provide the committees with "detailed budget figures, financial analyses . . . and the like." Beard Aff. ¶ 6.[6]

As described by Beard, Howard's role as Budget Director and later as Senior Advisor was to assist in this process. In the former position, she monitored and analyzed House spending; prepared a budget for the House for upcoming fiscal years; liaised with the Committees on Appropriations and House Administration, leadership offices, and other House offices; and communicated budget information to the Committees and the CAO. Beard Aff. ¶ 8. In the latter, she analyzed the merits of leasing versus buying furniture for the House, tallied up the monetary savings from the "Green the Capitol" sustainability initiative, and studied the possible implementation of a new business management strategy. Beard Aff. ¶ 12. In both positions, the affidavit states, Howard was responsible for the Government Contributions Account, a significant component of the annual legislative branch budget that includes taxes and benefits paid by the House for its employees. Beard Aff. ¶¶ 9–10, 12.

---

[6] Howard takes issue with the CAO's assertion that he and his office have legislative duties, pointing to various publications and public documents that describe the CAO's operational and administrative responsibilities and some that even describe the CAO's function as "non-legislative." Pl.'s Opp'n at 10 (quoting THE ALMANAC OF THE UNELECTED: STAFF OF THE U.S. CONGRESS 2008 (Lisa Friedman ed., 21st ed. 2008)). These efforts are unpersuasive. It is uncontested that the CAO's office has some, even many, non-legislative responsibilities, but that fact does not preclude it from having legislative duties as well. Likewise, broad generalizations in books and on websites cannot rebut the CAO's own affidavit describing his specific responsibilities and those of his office. In any event, the ultimate issue is not the CAO's role in the legislative process, or even Howard's, but rather whether proof of Howard's claims requires an impermissible investigation into that process. See Scott, 522 F. Supp. 2d at 269 & n.6.

Finally, the affidavit describes the CAO's reasons for transferring and later terminating Howard.[7]  Because the two actions that Howard challenges were ostensibly motivated by different concerns, the Court will address them separately.

### 1.    Transfer from Budget Director to Senior Advisor

The Court turns first to Howard's claim that her January 2009 transfer from Budget Director to Senior Advisor was a discriminatory act based on her race.[8]  The Court concludes that the CAO has offered a legitimate legislative justification for Howard's transfer, but that Howard may challenge that explanation without offending the Speech or Debate Clause by showing that it is inconsistent with the CAO's contemporaneous explanation for the challenged action.

### a.    Howard Cannot Challenge the Veracity of the CAO's Explanation for Her Transfer Without Probing into Legislative Conduct or Motivations

The Beard affidavit gives three reasons for Howard's transfer from Budget Director to Senior Advisor: (1) she lacked the interpersonal skills to be an effective manager; (2) she had useful analytical skills; and (3) she did not share information with or listen to other CAO employees who worked on budget matters and expressed to other House actors, including the Committee on Appropriations, her own budgetary preferences rather than the views of the CAO. Beard Aff. ¶ 13.  The CAO asserts that the affidavit establishes conclusively that Howard was

---

[7]    Howard does not dispute that the CAO's proffered reasons for the actions she challenges are facially legitimate and non-discriminatory.

[8]    Howard terms this event a demotion; the CAO calls it a reassignment.  In adopting "transfer," the Court draws no conclusions as to whether this event was an adverse employment action.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 767–68 (1998) (a Title VII disparate-treatment claim requires a plaintiff to prove "an adverse employment action because of race").

transferred from her Budget Director position because of her poor performance of duties integral to the legislative process. Specifically, he points to the affidavit's third reason: Howard's inadequate communications with other CAO employees and her unauthorized interactions with other House actors, including the Committee on Appropriations. Howard retorts that the affidavit does not show that she was involved in any protected legislative activity. The Court cannot agree.

Although the affidavit is vague as to the content of Howard's interactions with the Committee on Appropriations, it states that Howard communicated to the committee "information that reflected her own budgetary preferences and views rather than the views of the CAO." Beard Aff. ¶ 13. The natural implication of this language — which Howard does not dispute — is that Howard was making recommendations as to, or providing information that would form the basis of, the composition of the House budget, which the committee was responsible for incorporating into the next annual legislative branch appropriations bill. *See* Beard Aff. ¶ 3 (describing the Committee on Appropriations).

Consequently, the Court must conclude that Howard cannot challenge the veracity of the CAO's description of this activity without transgressing the bounds of the Speech or Debate Clause. *Scott* illustrates why. There, the Representative justified firing his scheduler on the grounds that she had made errors that caused him to, inter alia, miss meetings and votes. *See Scott*, 522 F. Supp. 2d at 270–71. The *Scott* court concluded that the plaintiff could not show that this explanation was pretextual without "refut[ing] the Congressman's representations that he failed to attend all or part of one or more committee meetings on account of Plaintiff's errors, and explor[ing] the reasons behind why the Congressman failed to attend such meetings." *Id.* at

271. Such a showing would be impossible without inquiring into legislative activity: "whether the Congressman missed or attended an actual vote or hearing, and the reasons why he may have attended or missed an actual vote or hearing, are inquiries that impermissibly relate to the legislative process." *Id*.

The same is true here. In order to challenge the veracity of the CAO's description of her communications with the appropriations committee, as she intends to do, Howard must show either that these communications never occurred or that their substance was not as the CAO portrays it. *See* Pl.'s Opp'n at 12 (stating Howard's intention to show that the CAO's explanations for her transfer are "utter fabrications"). The Court sees no way for Howard to do so without questioning committee personnel about, or offering evidence of, the nature and extent of their communications with her regarding the budget and the appropriations bill. Inquiries such as these, which would probe the development of legislation among Members, aides, or committee staff, are prohibited by the Speech or Debate Clause. *See McMillan*, 412 U.S. at 313 (holding that the acts of committee members and staff in authorizing and preparing a committee report are protected by the Clause); *Fields*, 459 F.3d at 14 (stating that "interactions with legislative staff (which may form part of the basis for personnel actions) are often part of the due functioning of the legislative process" (citing *Gravel*, 408 U.S. at 628–29)); *Pittston Coal Grp. v. Int'l Union, United Mine Workers*, 894 F. Supp. 275, 278 n.5 (W.D. Va. 1995) (barring the plaintiff from deposing a former senatorial aide regarding the legislative intent behind a particular bill); *United Transp. Union v. Springfield Terminal Ry.*, 132 F.R.D. 4, 6 (D. Me. 1990) (stating that, because legislators "must be able to discuss and analyze issues that are subjects of pending or potential legislation . . . [i]nternal congressional communication, whether between

16

legislators or between legislators and their aides," is protected).  Thus, Howard may not challenge the veracity of the CAO's description of her communications with the committee or its staff.

### b.     The CAO's Legitimate Legislative Explanation for Howard's Transfer Does Not Require the Dismissal of her Discrimination Claim

If Howard's only means of challenging the CAO's proffered justifications for her transfer was to attack the veracity of his statements regarding her communications with the committee, the Court's analysis would be at an end.  *See Scott*, 522 F. Supp. 2d at 272 (dismissing the plaintiff's claim because she "has not argued . . . that there exists any evidence contrary and unrelated to the Congressman's stated reasons for Plaintiff's demotion that would not require an inquiry into the legislative acts described above").  Howard, however, avers that she can challenge the CAO's asserted reasons for her transfer without probing into protected activity.  She states that, when her transfer took place, she was given a different explanation for it: her budget director position was being abolished.  She also states that she was told that her transfer was not performance-based.  Further, she asserts that none of the reasons now given by the CAO for her transfer were ever mentioned in her performance evaluations.  Thus, she contends, she can show that the CAO has offered varying and contradictory explanations for her transfer, thereby establishing pretext without directly challenging the truth of the CAO's statements regarding her communications with the appropriations committee.[9]

---

[9]     In pretext cases, shifting and contradictory justifications for the challenged employment action can give rise to an inference of discrimination.  *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1295 (D.C. Cir. 1998) (en banc); *Sw. Merch. Corp. v. NLRB*, 53 F.3d 1334, 1344 (D.C. Cir. 1995) (citing *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994)).

Howard thus seeks to fit her transfer claim into a category of cases that was expressly left unaddressed by the *Fields* plurality:

> We need not decide today whether a case in which the plaintiff uses evidence unrelated to legislative acts — such as . . . *evidence that at the time of discharge the [defendant] offered a different reason for the employment action from the one alleged in the affidavit* — to demonstrate that the defendant's legislative explanation is pretext requires more questioning of the defendant's legislative motives than the Speech or Debate Clause allows.

*Fields*, 459 F.3d at 16–17 (emphasis added); *see also Scott*, 522 F. Supp. 2d at 272 (noting that the *Fields* plurality "left open" the question of precisely when the Speech or Debate Clause's evidentiary privilege would require the dismissal of Accountability Act claims). Before addressing whether this category of cases is viable, however, the Court must determine whether Howard's transfer claim actually belongs therein. *See Scott*, 522 F. Supp. 2d at 272 (declining to reach this question where the plaintiff offered no independent evidence that could contradict the defendant's explanation for her termination).

### i.    Howard Has Extrinsic Means of Challenging the CAO's Legislative Explanation for her Transfer

Howard's arguments highlight two apparent contradictions between the CAO's current explanation for her transfer and the one she was given when the transfer happened: first, the difference between the explanation for her transfer that she was given contemporaneously (that it was a result of the budget director position being abolished) and the reasons provided in the Beard affidavit (described above); second, the fact that, although she was told at the time that her transfer was not performance-based, the CAO now offers performance-related justifications therefor. *See Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 431 (1st Cir. 2000) (finding that a jury could infer discrimination where the defendant told the plaintiff that his termination

was "not a performance issue," but later asserted during litigation that he had been terminated for failing to abide by company policy and cooperate with coworkers). The CAO argues persuasively that the first inconsistency is merely apparent, and results from an elaboration of, rather than a change in, his explanation for Howard's transfer.[10] The second contradiction, however, is not so easily explained away.

Howard was apparently told at the time of her transfer that it was not performance-based. Pl.'s Opp'n Ex. F ("Howard Decl.") ¶ 2. The CAO now asserts that the transfer resulted — in part — from Howard's inadequate or unauthorized communications with other employees or offices and from her lack of interpersonal skills, issues that are unquestionably performance-related. The CAO suggests that "from a Human Resources perspective, there would have been legitimate reasons" for not telling Howard of the performance-based component of the transfer decision, observing that "it might well have been viewed as counterproductive to delve into performance issues with Ms. Howard when those issues related to a position she no longer held (and that no longer existed)." Def.'s Reply at 20 n.12. There are three problems with this explanation. First, it appears not in the Beard affidavit but rather in the CAO's reply brief. This fact, in combination with highly tentative phrasing and a lack of citations, suggests that this

---

[10] The CAO avers that the decision to make Howard a Senior Advisor had two discrete components: first, the choice to abolish the budget department (which was unrelated to Howard's performance), and second, the conclusion (based on the Beard affidavit factors) that Howard was best-suited to a Senior Advisor role. The fact that Howard was told only of the first component of the decision does not, the CAO asserts, create a contradiction between the first and the second, where each played a role in the original decision. *See* Def.'s Reply at 19–20. The Court agrees. *See Ford v. Mabus*, 2010 WL 5060998, at *3 (D.C. Cir. Dec. 10, 2010) (explaining that an apparent contradiction in rationales for a challenged employment action is not "dispositive of pretext" where the seeming shift in rationale in fact resulted from disclosure of an "additional rationale" not previously mentioned).

argument is simply unsupported speculation. Second, this argument fails to address Howard's

contention that none of her performance evaluations mentioned the reasons the Beard affidavit

now gives for her transfer.[11] *See EEOC v. D.C. Public Schs.*, 277 F. Supp. 2d 44, 51 (D.D.C.

2003) (finding a genuine issue of material fact where an employer's stated, performance-based

reasons for laying off the plaintiff were not reflected in the plaintiff's performance evaluations).

Third, and most importantly, this explanation does not show that an apparent contradiction is not

in fact present; rather, it offers an innocent explanation for an inconsistency that *does* exist — an

explanation whose credibility (apart from its apparent lack of evidentiary support) this Court is

not well-positioned to assess at this highly preliminary stage. *See Dominguez-Cruz*, 202 F.3d at

432 (noting that although "[a] jury could, at trial, accept the employer's explanation that it

initially chose not to discuss the plaintiff's performance issues publicly out of a desire to avoid

humiliating him," that explanation was not sufficient to warrant summary judgment for the

employer).[12]

    In light of the foregoing, the Court concludes that Howard's case is indeed one "in which

the plaintiff [seeks to] use[] evidence unrelated to legislative acts . . . to demonstrate that the

---

[11]     The Court notes that the communications with the appropriations committee to which the CAO objected could easily have occurred between Howard's last performance evaluation in November 2007 and her transfer in January 2009; even so, the absence of any mention of her interpersonal skills may be probative of pretext.

[12]     In noting that Howard has identified unexplained contradictions in the CAO's explanations for her transfer, the Court does not pass judgment on the merits of her claim, under the *McDonnell Douglas* framework or otherwise. This discussion is intended *only* to demonstrate that Howard's case is one "in which the plaintiff uses evidence unrelated to legislative acts — such as . . . evidence that at the time of discharge the [defendant] offered a different reason for the employment action from the one alleged in the affidavit." *Fields*, 459 F.3d at 16–17.

defendant's legislative explanation is pretext." *Fields*, 459 F.3d at 16–17. Thus, the Court must attempt to resolve the question left open by the *Fields* plurality: whether such a case "requires more questioning of the defendant's legislative motives than the Speech or Debate Clause allows." *Id*. at 17.

> ## ii. Accountability Act Plaintiffs May Attack Legislative Explanations for Challenged Employment Actions by Using Evidence Unrelated to Legislative Acts

The question left open in *Fields* can be put this way: when the defendant has offered a legitimate legislative explanation for the challenged employment action, may the plaintiff — who is barred from attacking the *veracity* of the defendant's description of that legislative activity — nevertheless seek to show that the *relationship* between the legislative activity and the challenged employment action is not as the defendant describes it? Neither party addresses this question; Howard appears to assume that this type of argument is permissible, and the CAO merely argues that Howard's suit does not raise this issue. Regardless, the Court concludes that the Speech or Debate Clause does not prevent plaintiffs like Howard from "us[ing] evidence unrelated to legislative acts . . . to demonstrate that the defendant's legislative explanation is pretext."

To begin with, it is clear that a legislative explanation for a challenged employment action does not render that action legislative in nature. It is true that *Fields* did not rule out the possibility that *some* congressional personnel actions could be legislative in nature. *See Scott*, 522 F. Supp. 2d at 269 (citing *Fields*, 459 F.3d at 10, 11). But the *Fields* plurality could not have left open the possibility that a plaintiff could "use[] evidence unrelated to legislative acts . . . to demonstrate that the defendant's legislative explanation is pretext" if it believed that a legislative explanation automatically transformed a challenged employment action into a legislative act. If

that were the case, the challenged action would fall within the Clause's immunity prong and be absolutely protected from judicial scrutiny. *See Browning*, 789 F.2d at 928–29. Thus, for the Clause to bar Howard's claim here, it would need to reach not only the legislative activity that the CAO describes but also his attribution of Howard's transfer to that activity. The Supreme Court's decision in *Brewster* makes clear that the Clause does not reach that far.

In *Brewster*, a former Senator was prosecuted for accepting a bribe in exchange for a promise of favorable legislative action. *See* 408 U.S. at 502–03. The Court held that the prosecution could go forward, notwithstanding the fact that the *quid* to the bribe's *quo* was the performance of legislative acts. The Court rejected the argument that "inquiry into the alleged bribe is inquiry into the motivation for a legislative act," *id*. at 528, explaining that the act of taking a bribe was not itself legislative in nature, and that the government could prove its case without delving into whether and why the Senator had actually taken the actions for which he was allegedly bribed. *See id.* at 525–29.

A similar analysis applies here. If, under *Fields*, Howard's transfer was not a legislative act, and if Howard can prove that the CAO's justification for her transfer was not the real reason behind it — without probing whether, how, or why she actually communicated with committee staff regarding the budget and the appropriations bill — then the Speech or Debate Clause should present no bar to her claim. Put another way, in *Brewster*, the Clause barred the government from questioning or introducing evidence of the Senator's protected conduct, but permitted the government to establish a *relationship* between that conduct and the alleged bribe. By the same principle, although the Clause prevents Howard from inquiring into the protected activity at issue

22

here — or attempting to show that it never occurred — it should allow her to establish that there was *no relationship* between that activity and her transfer.

The converse conclusion — that cases in which the plaintiff seeks to prove pretext via evidence unrelated to legislative acts are barred — would transform the evidentiary component of the Speech or Debate Clause into a grant of immunity. A defendant would need only to proffer a legislative justification, no matter how flimsy or demonstrably false, for a challenged employment action, and the plaintiff's claim would be barred, even if it could be proven without *any* inquiry into legislative acts or the motivation thereof. Such a result would appear to go beyond the reach of the Clause as it has heretofore been interpreted. *See Brewster*, 408 U.S. at 528 (explaining that because "[t]he Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions," a defendant "could not . . . obtain[] immunity from prosecution by asserting that the matter being inquired into was related to the motivation for his [legislative actions]"); *cf. Helstoski*, 442 U.S. at 498 (Stevens, J., concurring in part and dissenting in part) ("[I]t is illogical to adopt rules of evidence that will allow a Member of Congress effectively to immunize himself from conviction simply by inserting references to past legislative acts in all communications, thus rendering all such evidence inadmissible."). Further, the Court cannot see a meaningful relationship between such an outcome and the Clause's "'fundamental purpose' . . . to free 'the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator,'" *Helstoski*, 442 U.S. at 492 (quoting *Gravel*, 408 U.S. at 618), "without unduly infringing 'the rights of private individuals.'" *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1202 (D.C. Cir. 2009) (quoting *Gravel*, 408 U.S. at 624 n.15).

23

In sum, the Court concludes that Howard's claim that her transfer was discriminatory may go forward. In attempting to prove that claim, Howard may seek to show that her communications with the committee did not prompt her transfer by showing that such an explanation is contradicted by the CAO's other representations or not reflected in her performance evaluations or other documentation. But she may not attempt to show that those communications never took place or that they were other than as the CAO described them. Nor may she in any other way probe the nature, extent or substance of those exchanges. This will likely make it more difficult for her to prove pretext, but that is the result that the Constitution requires. *See Brewster*, 408 U.S. at 528 ("Perhaps the Government would make a more appealing case if it could [refer to legislative activity], but here, as in that case, evidence of acts protected by the Clause is inadmissible."); *Fields*, 459 F.3d at 14 ("The Speech or Debate Clause . . . may preclude some relevant evidence in suits under the Accountability Act.").

## 2. Howard's Termination

The Court now turns to Howard's claims that her April 2009 termination from the CAO's office was motivated by her race and by retaliatory animus. Unlike Howard's transfer claim, her termination claims must be dismissed because they cannot proceed without inquiry into actions — specifically, communications — that are shielded by the Speech or Debate Clause.

The Beard affidavit explains Howard's termination as follows: around the time of her transfer to Senior Advisor in January of 2009, Howard was instructed to analyze and reconcile the Government Contributions Account. Beard Aff. ¶ 12. Between January and April, despite having the data and computer access needed to perform this task, Howard "repeatedly refused" to

do so.  Beard Aff. ¶ 14.  Accordingly, with the CAO's approval, Deputy CAO Qureshi informed Howard that her employment was being terminated.

The CAO avers that Beard affidavit establishes conclusively that Howard was terminated for her performance of conduct — the budget analysis assignment — that is protected by the Speech or Debate Clause.  Howard makes two responses: first, she avers that her budget analysis duties were not integral to the legislative process within the meaning of *Gravel*.  Second, she argues that, even by the CAO's own description, she was not terminated for the performance of protected conduct, meaning that her claims would not require inquiry into legislative conduct or motivations.  Howard's position is not without force, but is ultimately unavailing.

Howard's first argument — that her budget analysis task was "administrative, not legislative, in nature" — cannot be sustained.  As the CAO points out, numerous cases have held that the gathering of information for use by Members of Congress in deliberating over proposed legislation is protected by the Clause.  *See, e.g.*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504–05 (1975); *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976) (en banc); *see also Jewish War Veterans, Inc. v. Gates*, 506 F. Supp. 2d 30, 55–57 (D.D.C. 2007) (collecting cases).  Howard offers the Court no basis on which to distinguish between information gathering "in aid of a legitimate legislative act," which is protected, *Jewish War Veterans*, 506 F. Supp. 2d at 57, and the information sifting and analysis that her task required, which was likewise "in aid of" legislative activity.  *See* Beard. Aff. ¶¶ 9–10.  Further, when determining whether a specific act is protected, the Courts have not distinguished between Members themselves and aides or officers who were instructed to perform the act by a Member or to whom Congress has delegated the authority to act.  *See, e.g.*, *Gravel*, 408 U.S. at 616–17;

*Consumers Union, Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1345 n.8, 1350

(D.C. Cir. 1975); *Hastings v. U.S. Senate, Impeachment Trial Comm.*, 716 F. Supp. 38, 42

(D.D.C. 1989); *but see Dombrowski v. Eastland*, 387 U.S. 82, 84–85 (1967).  In light of this

substantial body of precedent, the Court concludes that Howard's task was legislative in nature.

*Cf. Bryant v. Jones*, 575 F.3d 1281, 1305–1307 (11th Cir. 2009) (holding that a county official

was engaged in legislative activity when he developed and drafted a budget that would be

submitted to county legislators for enactment).[13]

Howard next argues that, by the CAO's own description, she was not fired for her

*performance* of the analysis and reconciliation task, but rather for repeatedly *refusing* to do it; in

essence, she was fired for insubordination.  Thus, an attack on the CAO's justification for

Howard's termination would turn not on the nature or import of her assigned task but on rather

more prosaic questions: what Qureshi told Howard to do, whether or why Qureshi and Nuti

refused to meet with Howard, and whether or why Howard had access to certain computer

systems.  *Compare* Beard Aff. ¶ 14, *with* Am. Compl. ¶¶ 38–40, 43–46, 58–61, *and* Howard

---

[13]    In reaching this conclusion, the Court is mindful that Howard is several steps
removed from any individual legislator: she received her instructions from Qureshi, who
presumably received them from the CAO himself, whose authority is delegated by the house
committees, the power of which derives from that of the individual Members who make up the
committees.  Thus, Speech or Debate Clause concerns may be less acute in this context than in a
Member's personal office or among committee staff.  *See Dombrowski*, 387 U.S. at 85 ("This
Court has held . . . that [Speech and Debate Clause] doctrine is less absolute, although applicable,
when applied to officers or employees of a legislative body, rather than to legislators
themselves." (citing *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951))).  Even so, there is not a
sufficient basis in precedent to conclude that a task is non-legislative merely because it is
performed by staff who are several steps removed from the Members themselves.  Courts have
even extended the Clause's protections to private organizations and executive branch personnel,
provided that they were engaged in legislative activity at the behest of Congress.  *See Consumers
Union*, 515 F.2d at 1345 n.8, 1350; *Hastings*, 716 F. Supp. at 42.

Decl. ¶¶ 5–6.  This is a fair distinction, but it overlooks the fact that Howard's interactions with Qureshi and Nuti regarding her task are also off-limits.

Simply put: internal legislative branch communications regarding protected legislative activities are themselves protected from judicial scrutiny by the Speech or Debate Clause.  That fact is a natural outgrowth of *Gravel*'s holding that Members and their aides are to be treated as one for Speech or Debate Clause purposes: if an activity is protected equally whether a Member or an aide performs it, it is only logical that the communications by which the Member instructs the aide to perform it are protected as well.  Thus, the *Gravel* Court held that the Clause prevented a senator's aide from being asked any questions before a grand jury "concerning *communications between the Senator and his aides* during the term of their employment and *related to . . . any . . . legislative act* of the Senator."  408 U.S. at 629 (emphasis added). Likewise, in *United States v. Hansen*, No. 83-0075 (D.D.C. Mar. 9, 1984), a judge of this court quashed subpoenas that sought to compel house officers and staff to testify "regarding House procedures, instructions and authority."  *Hansen*, No. 83-0075, slip op. at 2.  The *Hansen* court stated that "[e]ven general questions of the nature the government proposes [to ask] trigger the testimonial privilege if they relate to" legislative activity.  *Id*. at 4 (citing *Eastland*, 421 U.S. at 503).[14]

The foregoing rule is fatal to Howard's termination claims.  Howard's claims — and her argument that the CAO's explanation for her firing is pretextual — turn on precisely what Qureshi told her to do and when he did so.  *See* Am. Compl. ¶¶ 38–40, 43–46, 49–53, 55–56,

---

[14]    As with Howard's task itself, the fact that the exchanges at issue took place several "links in the chain" from any actual legislator does not, under governing precedent, provide a basis to conclude that it is not protected by the Speech or Debate Clause.

58–62; Pl.'s Opp'n at 14–15.  Without being able to probe the content of Qureshi's instructions

to her, it would be impossible for Howard to prove that she did not "repeatedly refuse" to

perform a task she had been told to undertake.  Consequently, Howard's termination claims

cannot succeed without intruding upon territory that lies within the aegis of the Speech or Debate

Clause.[15]

To be clear: the Court's reasoning does not rest on an understanding that the management

of employees with legislative duties is always legislative activity; such a conclusion would

contradict *Fields*'s express rejection of the *Browning* test.  *See Fields*, 459 F.3d at 12 n.20

("While there is no doubt a 'clear nexus' between a personnel decision involving an employee

with legislative duties and the Member's 'ability to carry out his representative responsibilities

effectively,' a 'nexus' alone is insufficient to trigger the protections of the Speech or Debate

Clause." (quoting *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 665

(D.C. Cir. 2006); *Brewster*, 408 U.S. at 528) (internal citations omitted)).  The Court's dismissal

of Howard's termination claims reflects only that the Clause protects internal legislative branch

communications regarding specific legislative activities that are themselves within the scope of

the Clause.  *See Gravel*, 408 U.S. at 629; *United Transp. Union*, 132 F.R.D. at 6; *cf. Fields*, 459

---

[15]    In reaching this conclusion, the Court does not endorse the CAO's broad assertion that the Clause protects "the manner in which the CAO carrie[s] out the his [sic] legislative responsibilities."  Def.'s Reply at 17 n.9.  First, that formulation's focus is misplaced: the proper focus is not the CAO's responsibilities — or Howard's — but the specific acts and motivations into which the suit must necessarily inquire.  *See Fields*, 459 F.3d at 11–12, 14–16; *Scott*, 522 F. Supp. 2d at 269; *supra* section II.B.1.a.  Second, *any* personnel or management actions involving an employee with legislative duties could arguably be part of "the manner in which the CAO carrie[s] out . . . his legislative responsibilities," but the *Fields* court held that not all such decisions are immunized from judicial scrutiny by the Clause.  *See Fields*, 459 F.3d at 11–12 & n.20.

F.3d at 12 (noting that Members are not engaged in activity integral to the legislative process when they are directing their aides to perform non-legislative tasks).

### III. CONCLUSION

This is a difficult case.  It involves the weighing of two principles of extraordinary gravity: on one hand, the independence of the legislative branch from intimidation and interference, and on the other, the "rooting out [of] every vestige of employment discrimination within the federal government."  *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 713 (D.C. Cir. 2009) (quoting *President v. Vance*, 627 F.2d 353, 363 (D.C. Cir. 1980)) (internal quotation marks omitted).  It also requires a foray into a particularly challenging area of legal doctrine.  *See, e.g.*, *Jewish War Veterans, Inc. v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007) ("It is hard enough to draw the crucial distinction between legislative and non-legislative acts, despite the existence of four decades of Supreme Court and D.C. Circuit case law to provide guidance.").  "These are perplexing questions.  Their difficulty admonishes us to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case."  *Whitehouse v. Ill. Cent. R.R. Co.*, 349 U.S. 366, 372–73 (1955).  Accordingly, the Court emphasizes that its holding turns on the specific facts of this case.  For the same reasons, the Court declines to adopt or address the two-part test advocated by the CAO.[16]  The D.C. Circuit did not announce a "blanket rule" for cases like this one, *see*

---

[16]    "We believe the legal standard should be as follows: to overcome the *Fields* presumption and avoid a Rule 12(b)(1) dismissal, a plaintiff in a legislative-branch employment case who, like Ms. Howard, lacks any direct evidence of discrimination, must make a clear and convincing evidentiary showing that (i) the reason articulated by the employer for the employment action was not the true reason for the action, and (ii) she can prove that at trial, *i.e.*, prove pretext, without probing 'the legislative activities and the motivations for those activities

*Fields*, 459 F.3d at 21 (Tatel, J., concurring), and it would imprudent for this Court to attempt to do so.

Accordingly, it is this 24th day of June 2011 hereby

**ORDERED** that the defendant's motion to dismiss [#16] is **GRANTED** as to Count I (discriminatory discharge) and Count IV (retaliation) of the amended complaint; and it is further

**ORDERED** that the motion is **DENIED** as to Count II (discriminatory demotion).

Henry H. Kennedy, Jr.
United States District Judge

---

asserted' in the affidavit filed in support of the motion to dismiss."  Def.'s Reply at 14 (quoting *Fields*, 459 F.3d at 15).