UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LATAUNYA HOWARD,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF THE CHIEF<br>ADMINISTRATIVE OFFICER OF THE<br>UNITED STATES HOUSE OF<br>REPRESENTATIVES,<br><br>    Defendant. | Civil Action 09-1750  (BJR) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff LaTaunya Howard brings this action against the Office of the Chief Administrative Officer ("CAO") of the U.S. House of Representatives. She alleges that the CAO[1] violated the Congressional Accountability Act of 1995, 2 U.S.C. § 1301 *et seq.*, by demoting her on the basis of her race and for engaging in protected activity, and by paying her less than her counterparts in other racial groups. Howard's two claims related to the termination of her employment were dismissed. *See Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 793 F. Supp. 2d 294, 308–11 (D.D.C. 2011). Howard now asks the Court to certify the order dismissing those claims for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Upon consideration of Howard's motion [Dkt. # 24], the opposition thereto, and the record of this case, the Court concludes that her motion should be granted.

---

[1] For the sake of simplicity, the Court will refer to the defendant in this action as "the CAO," although the defendant is technically not the Chief Administrative Officer himself but rather the entity of his office. *See* 2 U.S.C. §§ 1301(9), 1408(b).

## I. BACKGROUND

The facts underlying this action are described in detail in the prior opinion in this case. *See Howard*, 793 F. Supp. 2d at 296–97. In brief: Howard served in the CAO's office in various capacities from 2003 to 2009. In January 2009, her position was dissolved and she became a senior advisor to the Deputy CAO. Howard, who is a black woman, alleges that during her time in that position she was paid substantially less than the other senior advisors, both white men. She also asserts that this transfer was a demotion based on her race. In March 2009, Howard was fired. She then exhausted her administrative remedies, as required by the Congressional Accountability Act, *see* 2 U.S.C. § 1408(a), and commenced this action.

In November 2010, the CAO moved to dismiss three of Howard's claims—one regarding her transfer, and two regarding her eventual termination—contending that Howard could not prove these claims without probing into legislative activity protected by the Speech or Debate Clause of the U.S. Constitution.[2] *See* U.S. CONST. art. I, § 6, cl. 1. Applying the framework suggested by the plurality in *Fields v. Office of Eddie Bernice Johnson, U.S. Congress*, 459 F.3d 1, 13–17 (D.C. Cir. 2006) (en banc), the Honorable Henry H. Kennedy, Jr. in a thoughtful and detailed opinion denied the motion as to Howard's transfer claim but dismissed her two termination claims. Judge Kennedy concluded that Howard might be able to show that the CAO had offered shifting and inconsistent explanations for her transfer, and thereby prove her transfer claim without probing matters protected by the Speech or Debate Clause. *Howard*, 793 F. Supp. 2d at 302–08. Judge Kennedy granted the motion to dismiss her termination claims, however,

---

[2] The CAO did not move to dismiss Howard's fourth claim, for intentional infliction of emotional distress.

finding no way for Howard to prevail on those claims without inquiring into the constitutionally protected internal communications of the legislative branch. *Id.* at 308–11. In reaching this conclusion, Judge Kennedy was "mindful that," as an employee of the CAO, "Howard [was] several steps removed from any individual legislator." *Id.* at 309 n.13. He noted that "Speech or Debate Clause concerns may be less acute in [the CAO] than in a Member's personal office or among committee staff," but determined that "there is not a sufficient basis in precedent to conclude that a task is non-legislative merely because it is performed by staff who are several steps removed from the Members themselves." *Id.* Judge Kennedy went on to find that the disputed assignment at issue in Howard's termination was in fact "legislative in nature." *Id.* at 309. Because of the assignment's legislative nature, Judge Kennedy reasoned, communications between Howard and her supervisor regarding the assignment are "themselves protected from judicial scrutiny by the Speech or Debate Clause." *Id.* at 310. "Without being able to probe the content of [her supervisor's] instructions to her, it would be impossible for Howard to prove that she did not 'repeatedly refuse' to perform a task she had been told to undertake. Consequently," Judge Kennedy concluded, "Howard's termination claims cannot succeed without intruding upon territory that lies within the aegis of the Speech or Debate Clause." *Id.*

## II. ANALYSIS

Howard now asks the Court to certify the opinion and order discussed above for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).³  The CAO opposes this request, contending that certification is not appropriate.

Section 1292(b) creates an exception to the usual rule that only final judgments can be appealed.  *See* 28 U.S.C. § 1291.  It "'is meant to be applied in relatively few situations and should not be read as a significant incursion on the traditional federal policy against piecemeal appeals.'"  *Tolson v. United States*, 732 F.2d 998, 1002 (D.C. Cir. 1984) (quoting 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2658.2, at 80 (2d ed. 1983)) (footnote omitted in original).  Courts have understood section 1292(b) to state a three-part test for certification, requiring a movant to show: (1) that the order involves a controlling question of law, (2) as to which a substantial ground for difference of opinion exists, and (3) that an immediate appeal would materially advance the disposition of the litigation.  *See Vila v. Inter-Am. Inv. Corp.*, 596 F. Supp. 2d 28, 30 (D.D.C. 2009) (citing 28 U.S.C. § 1292(b)); *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003)).  Applying the statutory criteria to the case at hand, the Court concludes that certification is appropriate.

The order dismissing the two termination claims as barred by the Speech or Debate Clause involves a controlling question of law.  Under section 1292(b), a question of law is controlling if it "would require reversal if decided incorrectly."  *In re Vitamins Antitrust Litig.*, 2000 WL 673936, at *2 (D.D.C. Jan. 27, 2000); *see also Elkins v. District of Columbia*, 685 F. Supp. 2d 1, 6 (D.D.C. 2010); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp.

---

³ "Federal Rule of Appellate Procedure 5(a)(3) permits a district court to amend its orders to include this [certification] language . . . upon motion by a party."  *Estate of Hickman v. Moore*, 2011 WL 1058934, at *7 (E.D. Tenn. Mar. 21, 2011) (citing FED. R. APP. P. 5).

2d 16, 19 (D.D.C. 2002). The decision to dismiss those claims because they trench on territory protected by the Speech or Debate Clause obviously requires reversal if it has been decided incorrectly: if the claims are not constitutionally barred, then they must be permitted to go forward.

That question of law, moreover, is one as to which a substantial ground for difference of opinion exists. Judge Kennedy analyzed the CAO's motion to dismiss as the *Fields* plurality suggested he should. Contrary to the CAO's argument, however, that plurality opinion is not the law of this circuit. Rather, when a multi-judge panel issues fragmented opinions (as was the case in *Fields*) the opinion necessary to form a majority and "concurring in the judgment on the '"narrowest grounds"' should be regarded as the Court's holding." *King v. Palmer*, 950 F.2d 771, 780 (D.C. Cir. 1991) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, J.J.)); *see also, e.g.*, *Stephens v. US Airways Grp.*, 644 F.3d 437, 442 n.1 (D.C. Cir. 2011) (Kavanaugh, J., concurring in the judgment) (applying the *Marks* framework to D.C. Circuit decisions).

The eight judges who heard *Fields* en banc produced four opinions, with no consensus as to the role that the Speech or Debate Clause plays in litigation under the Congressional Accountability Act. A four-judge plurality focused its constitutional analysis on the question of whether a given suit required inquiry into legislative acts and the motivations for those acts. If it did, the plurality said, the suit would have to be dismissed. *Fields*, 459 F.3d at 17 (plurality opinion) (suggesting that any "plaintiff who seeks to prevail by quarreling with the defendant's statements about *activity* protected by the Speech or Debate Clause must fail") (emphasis added).

In contrast to the plurality's focus on legislative acts—an inquiry into *what* is shielded by the Speech or Debate Clause—a concurrence supported by three judges focused on *who* the Clause protects. According to the principal concurrence, the Clause can only be invoked by members of Congress and aides acting as a member's "alter ego." *Id.* at 26 (Brown, J., concurring in the judgment). Because suits brought under the Congressional Accountability Act are directed at the "employing office," 2 U.S.C. §§ 1301(9), 1408(b), and not at a member or her alter ego, the principal concurrence concluded that the Speech or Debate Clause would never function as a jurisdictional bar but "only as a testimonial and documentary privilege, to be asserted by members and qualified aides if they are called upon to produce evidence." *Fields*, 459 F.3d at 32 (Brown, J., concurring in the judgment). As noted by one judge who joined the plurality but also wrote separately to "point out the commonalities, [and] to briefly discuss the differences" between the several opinions, *id.* at 18 (Tatel, J., concurring), the principal concurrence seemed to suggest "that so long as aides are neither producing the evidence nor defending the case, litigation can center on the motivation for legislative acts." *Id.* at 20. Finally, another judge concurred in the judgment and in the plurality opinion only "to the extent it is consistent with the views" that she expressed in a brief opinion. *Id.* at 18 (Rogers, J., concurring in part and in the judgment). That judge chose not to answer the question of "what happens when legislative acts arise as potential evidence in varying contexts in CAA litigation." *Id.*; *see also id.* ("I would leave open the question of how the Clause may limit evidence offered by parties in CAA litigation and whether the role of the Member's personal office as the defendant under the CAA affects the application of the Clause.").

Because the plurality and the principal concurrence fundamentally disagreed as to the role that the Speech or Debate Clause plays in litigation under the Congressional Accountability Act, and because another judge declined to address the question, the "narrowest grounds" for the Circuit's holding are the ones on which the court was unanimous: "the Speech or Debate Clause . . . has some role to play in employment discrimination cases," and "the question of what precisely the Clause precludes is best resolved on a case-by-case basis." *Id.* at 18 (Tatel, J., concurring) (summarizing points of unanimous agreement). But there was no agreement as to the contours of that role, or how a court ought to conduct its case-by-case analysis. The question of law at issue in Howard's dismissed claims—whether plaintiff can prevail without inquiring into the constitutionally protected internal communications of the legislative branch—is therefore one as to which a substantial ground for difference of opinion exists.[4]

---

[4] Moreoever, although Howard herself does not raise this issue (likely because it was decided in her favor), in refusing to dismiss her transfer claim Judge Kennedy decided an issue that even the *Fields* plurality did not resolve:

> whether a case in which the plaintiff uses evidence unrelated to legislative acts— such as . . . evidence that at the time of discharge the [defendant] offered a different reason for the employment action from the one alleged in the affidavit—to demonstrate that the defendant's legislative explanation is pretext requires more questioning of the defendant's legislative motives than the Speech or Debate Clause allows.

*Fields*, 459 F.3d at 16–17 (plurality opinion). Judge Kennedy concluded that plaintiffs may indeed challenge a legislative explanation for an allegedly unlawful employment practice by "us[ing] evidence unrelated to legislative acts." *Howard*, 793 F. Supp. 2d at 306 (alteration in original) (quoting *Fields*, 459 F.3d at 16) (plurality opinion) (internal quotation mark omitted). That Judge Kennedy not only applied the framework set out by a plurality but also addressed a question on which even the plurality was silent bolsters the conclusion that substantial grounds for difference of opinion exist here. *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (substantial grounds for difference of opinion may be present where "the controlling law is unclear").

7

Finally, the third certification criterion—material advancement of the disposition of the litigation—is satisfied. If the Court's dismissal of Howard's termination claim were reversed after a final judgment, the Court and the parties would be required to undertake another round of discovery, more dispositive motions, and potentially another trial. *See APCC Servs.*, 297 F. Supp. 2d at 100 ("An immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed."). Conversely, if, post judgment, the Court of Appeals were to conclude that it was error to allow Howard's transfer claims to go forward, then the legislative branch would have been improperly subjected to the burden of defending those claims. *See Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam) (holding that the Speech or Debate Clause protects legislators "from the burden of defending" certain suits). And appellate review of the Speech or Debate Clause issues presented here "would conclusively resolve important legal issues that are completely separate from the merits of the actions." *APCC Servs.*, 297 F. Supp. 2d at 100. Howard's motion to certify for interlocutory appeal the Court's order dismissing her termination claims will therefore be granted.

### III.  CONCLUSION

It is hereby **ORDERED** this 4th day of January 2012 that plaintiff's motion for certification for interlocutory appeal [Dkt. # 24] of *Howard v. Office of the Chief Administrative Officer of the United States House of Representatives*, 793 F. Supp. 2d 294 (D.D.C. 2011), is **GRANTED** and the entire order certified for immediate appeal pursuant to 28 U.S.C. § 1292(b).

>                                     Barbara J. Rothstein
>                                     United States District Judge